IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jason Randall Sanders,<br><br>Plaintiff,<br><br>vs.<br><br>South Carolina Department of Public Safety, South Carolina Criminal Justice Academy, Miguel Montes Vera, Lewis Jackie Swindler, Michael Lanier, and Don Rauch,<br><br>Defendants. | C/A No. 3:25-cv-695-JFA<br><br>**OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Jason Sanders brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his rights under the United States Constitution along with related state law claims. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings. Specifically, the Magistrate Judge conducted an initial review of Defendants' Motion for Summary Judgment. (ECF No. 35).

After reviewing the dispositive motion and all responsive briefing, the Magistrate Judge assigned to this action prepared a thorough Report and Recommendation ("Report"), which opines that Defendants' motion should be granted in part and denied in part. (ECF No. 51). Each party filed objections to the Report as well as replies to opposing objections. (ECF Nos. 53, 54, 56 & 57). Thus, this matter is ripe for review.

## II. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate Judge's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

The legal standard employed in a motion for summary judgment is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.

## III. DISCUSSION

The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without a recitation. (ECF No. 51). In short, Plaintiff alleges his rights were violated when he was arrested for public disorderly conduct ("PDC") on October 1, 2022, and subsequently criminally prosecuted. Moreover, Plaintiff was consequently relieved from his position as a certified law enforcement officer and instructor with the South Carolina Criminal Justice Academy ("SCCJA"). Plaintiff sues the SCCJA and SCCJA officers Lewis Jackie Swindler, Michael Lanier, and Don Rauch. Plaintiff also sues South Carolina Department of Public Safety ("SCDPS") and SCDPS officer Miguel Montes Vera, who arrested him.

In response to the Report, Plaintiff enumerated seven objections which equate to wholesale disagreement with each portion of the Report that recommends dismissal of

Plaintiff's claims. Likewise, Defendants lodge two objections which take issue with those portions of the Report recommending the denial of summary judgment. The court has conducted a *de novo* review of the motion for summary judgment and the responsive briefing. Accordingly, each objection is addressed herein.

a. Unlawful Seizure Claim Against Montes

Plaintiff's first objection avers that the Report erred in recommending summary judgment as to Plaintiff's unlawful seizure claim. The Report declined to determine whether Montes had probable cause to arrest Plaintiff for PDC at the time of arrest. Instead, the Report avers that Montes is entitled to qualified immunity because Plaintiff "failed to cite case law showing Montes or a reasonable officer similarly situated at the time of Plaintiff's arrest had been fairly warned that arresting Plaintiff violated Plaintiff's clearly-established rights." (ECF No. 51, p. 28). Given Plaintiff's objections, this Court will take a fresh look at the unlawful seizure claim. The crux of Defendants' position is that Montes possessed probable cause for the arrest which defeats any claims of unlawful seizure or malicious prosecution. Moreover, Defendants assert Montes should be entitled to qualified immunity because Plaintiff's asserted right was not clearly established at the time of the arrest.

In a qualified immunity analysis at the summary judgment stage, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address the two prongs of the qualified immunity

analysis in any order. *Id*. The Court must be careful not to define the right at issue with too high a level of generality or too granular a level of specificity. *Somers v. Devine*, 132 F.4th 689, 696 (4th Cir. 2025) ("But, by the same token, a rejection of excessive generality does not equate to an insistence on exactitude.").

Plaintiff defines the right at issue as the right to be free from seizure absent probable cause. However, this definition is too vague to allow meaningful analysis. The right is more appropriately defined as Plaintiff's right to be free from arrest under the circumstances relevant here. In adjudicating the issue, the court is required to look at what Montes knew at the time of the arrest.[1] This analysis is not concerned with facts occurring after arrest, known solely to other officers, or related exclusively to individuals other than the plaintiff.[2] Any dispute of fact as to what Montes knew must be construed in Plaintiff's favor. When focusing on the facts and circumstances known to Montes at the time of Plaintiff's arrest, the Report states that

> it appears that Montes had probable cause to believe Plaintiff had conducted himself "in a disorderly or boisterous manner" in a public place based on his review of the video evidence and statements made at that time by Pavlick and the other bystanders, as well as by Plaintiff, including that Plaintiff, who had been drinking and was carrying a weapon, injected himself into the accident that occurred, identified himself as law enforcement, and engaged with Pavlick in some kind of altercation.

[1] "Probable cause to justify an arrest arises 'when facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

[2] Accordingly, Plaintiff's continued references to information discovered after the arrest or references to Pavlick's actions as disorderly are wholly irrelevant.

(ECF No. 51, p. 26).

When reviewing the entirety of the record, there appears to be a genuine issue of material fact as to the information available to Montes at the time of the arrest. In his affidavit for uniform traffic arrest, Montes stated that there was video evidence showing Plaintiff "yelling profanities" and striking "a person with his right arm." (ECF No. 45-14, p. 2). Conversely, Montes gives a different account of the video evidence in his incident report wherein he recounts "a video where it shows Mr. Sanders close to Mr. Pavlick, Mr. Sanders then puts his hand up with an open palm trying to cover his face and then attempts to strike Mr. Pavlick's phone, then the video footage goes off frame, it then comes back onto frame to Mr. Sanders with closed fists." (ECF No. 45-1, p. 5). Montes also testified that the Pavlick cell phone video–which Montes relied on to justify the charge–"doesn't capture Jason Sanders hitting Mr. Pavlick at any point" and "doesn't capture Mr. Sanders cursing at all." (ECF No. 45-7, p. 15). Montes also had evidence that Plaintiff drove to the scene on a motorcycle while carrying a gun after drinking. However, there is a dispute as to whether Plaintiff was intoxicated and his possession of a firearm appears to be legal. Given the above, there is a genuine issue of material fact as to whether Montes could reasonably believe Plaintiff used profanities or struck Pavlick. These issues must be construed in Plaintiff's favor. The question then becomes whether Montes had probable cause to arrest an individual that identified himself as an officer after injecting himself into an active DUI scene, smelled of alcohol himself, attempted to push the phone out of a confrontational bystander's hand, and then voluntarily withdrew from the situation.

The court acknowledges that this is a close call, and qualified immunity is meant to protect "bad guesses in gray areas." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Here, however, when the facts and inferences are construed in a light most favorable to Plaintiff, a jury could determine Montes lacked probable cause to arrest Plaintiff for PDC. Montes acknowledges that the relevant portion of the PDC statute requires a person "(1) found on any highway or at any public place or public gathering in a grossly intoxicated condition[3] or otherwise *conducts himself in a disorderly or boisterous manner*; [or] (2) uses obscene or profane language on any highway or at any public place or gathering or in hearing distance of any schoolhouse or church." S.C. Code Ann. § 16-17-530 (emphasis added). Because there is a genuine issue as to whether Montes possessed probable cause, Plaintiff has established a violation of his constitutional rights sufficient to defeat the first prong of qualified immunity. This conclusion is bolstered by the fact that the initial responding officer found no basis to arrest Plaintiff and Defendants' expert and designated representative both opined they would not have arrested Plaintiff for PDC. (ECF Nos. 45-10, p. 101, & 45-11, p. 65).

Defendants would have this Court conclude that Montes had probable cause for PDC based on Plaintiff's intoxication and Montes' belief that Plaintiff voluntarily injected himself into a DUI investigation while broadcasting he was law enforcement and then striking Pavlick. Evidence showing Plaintiff in a defensive posture on the video along with

[3] Although evidence in the record shows Plaintiff had been drinking prior to this incident, there appears to be no contention that he was "grossly intoxicated." There also appears to be no dispute that Montes lacked probable cause to arrest Plaintiff for DUI.

crowd comments such as Plaintiff "swung first" indeed support such a conclusion. However, Defendants' position would require this Court to construe the contested facts in light most favorable to Montes. Given the procedural posture of this action, the Court cannot indulge Defendants' request. Accordingly, Plaintiff has presented sufficient evidence of lack of probable cause to support an unlawful seizure claim.

The Court must also determine whether this right was clearly established at the time of the incident. There is no doubt that Montes was on notice of an individual's general right to be free from arrest absent probable cause of a crime. However, "[d]etermining whether a right is 'clearly established' cannot be done in isolation from the perceived facts of the case in which the immunity is claimed." *Somers*, 132 F.4th at 696. The Court must determine "whether an objectively reasonable officer in the defendant's shoes would understand that what he is doing violates that right." *Id.* Thus, the "right at issue here is not the general right to be free from arrest without probable cause, but rather the right to be free from arrest under the particular circumstances of the case." *Graham v. Gagnon*, 831 F.3d 176, 182 (4th Cir. 2016). "In other words, the officers' immunity turns on the 'objective legal reasonableness' of their conclusion that there was probable cause to arrest." *Id.*

Accordingly, the Court must determine whether Montes was on notice that Plaintiff's actions failed to generate probable cause at the time of the arrest. Again, when the evidence is viewed in a light most favorable to Plaintiff, Montes knew cell phone videos showed Plaintiff close to Pavlick. The video then shows Plaintiff put his hand up with an open palm trying to cover his face and attempt to strike Pavlick's phone. The video footage

goes off frame; it then comes back onto frame to Plaintiff with closed fists. Montes also believed Plaintiff smelled of alcohol and carried a firearm. However, none of these actions show that Plaintiff "conduct[ed] himself in a disorderly or boisterous manner" sufficient to support a PDC charge.[4] Accordingly, Plaintiff's right to be free from an unreasonable search and seizure based on the evidence known to Montes was clearly established and summary judgment is inappropriate.

The Court again acknowledges that this presents a close call. A factfinder may very well conclude that Montes possessed probable cause to effectuate Plaintiff's arrest for PDC. However, when all of the evidence is construed in Plaintiff's favor, the Court is constrained to agree that a dispute remains as to whether Montes had probable cause and the right at issue was clearly established. Accordingly, summary judgment as to the

---

[4] Plaintiff provides several examples of South Carolina cases wherein similar actions were insufficient to support an arrest for PDC. *See, e.g.*, *State v. Perkins*, 306 S.C. 353, 412 S.E.2d 385 (1991) (reversed PDC conviction where the defendants merely "became upset and raised their voices"); *State v. Pittman*, 342 S.C. 545, 537 S.E.2d 563 (Ct. App. 2000) (noting that "if Pittman's only disorderly behavior had been to use profanity, or to complain about [the] Officer . . . removing him from the vehicle, he could not be arrested for public disorderly conduct."); *State v. Bailey*, 368 S.C. 39, 626 S.E.2d 898 (Ct. App. 2006)(affirming directed verdict for defendant who was "extremely argumentative and loud and boisterous" with police officers outside a gas station but never used profanity.).

These prior cases place Montes on notice that Plaintiff's actions, when construed in a light most favorable to Plaintiff, would not provide probable cause for an arrest. *Graham v. Gagnon*, 831 F.3d 176, 186 (4th Cir. 2016) ("Regardless, we are not the first court to read this statute. Both the [State] courts and this Court have applied the statute many times before, and there is a small mountain of caselaw that makes clear that whatever the outer boundary of [State statute], [Plaintiff] came nowhere near it.").

unlawful seizure claim is inappropriate at this time. The Report is overruled to the extent it is inconsistent with this determination.

b. Fifth Amendment Claims Against Montes

Plaintiff next avers that the Magistrate Judge erred in concluding that Plaintiff failed to present evidence to support his Fifth Amendment claim. Plaintiff characterizes this claim as a "*Garrity* claim"[5] and avers that his Fifth Amendment rights were violated when Montes referenced the internal SCCJA investigation in his closing arguments during Plaintiff's PDC trial. The Report notes that Plaintiff believes the SCCJA must have relayed the contents of Plaintiff's statement within that investigation to Montes prior to the PDC trial. The problem, as noted by the Report, is that Plaintiff fails to present any evidence supporting the sharing of information to Montes and instead offers only speculation.

In contrast, Defendants assert Montes learned of the investigation via a social media post. Plaintiff argues Montes's testimony indicates more knowledge of the investigation than could be garnered from a social media post. However, Plaintiff has failed to support this proposition with evidence. Plaintiff further posits that SCCJA conducted a *Garrity* investigation using an unqualified investigator. Plaintiff also notes that Montes shared information with SCCJA. However, none of these allegations show SCCJA shared information protected by *Garrity* with Montes.

Without more, Plaintiff has failed to carry his burden. Plaintiff may not rely on unsupported speculation to back his claims. *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.

[5] Under *Garrity v. New Jersey*, 385 U.S. 493 (1967), statements obtained from public employees under threat of job loss are compelled and inadmissible in subsequent criminal proceeding.

1985) (noting the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Here, the Court can only speculate as to the sharing of information from SCCJA to Montes as there is no evidence showing it ever occurred. Accordingly, the Report correctly concluded that summary judgment must be awarded as to Plaintiff's Fifth Amendment *Garrity* claim against Montes.

c. Sixth Amendment and Fourteenth Amendment Claims Against Montes

Plaintiff next avers the Report erred in determining Plaintiff's Sixth Amendment and Fourteenth Amendment claims should be dismissed. These claims are based on Plaintiff's contention that Montes's pursuit of a trial without notifying Plaintiff deprived him of due process.

Assuming without deciding that Plaintiff's Sixth and Fourteenth Amendment rights were violated, Montes is nevertheless entitled to qualified immunity. Here, the record evidence shows that Plaintiff was tried in his absence after his attorney[6] spoke with Sgt. Franklin Melendez, Montes' supervisor, and represented that Montes agreed to drop the charges. Montes later appeared and noticed the notation on a docket sheet that the charges were to be *nolle prossed*[7] and nevertheless pursued the charges because he had never

[6] The Court notes that it appears Plaintiff's attorney in the criminal matter, Joshua Golson, is also an attorney of record in the instant matter. Given the allegations from Melendez that Golson made material misrepresentation in order to secure a favorable outcome in Plaintiff's criminal trial, the Court is concerned that Golson may be a material witness to some or all of the claims within this matter. The Court assumes Golson is aware of the ethical obligations regarding attorney representation in a matter which he may also be called as a witness.

[7] "*Nolle Prossed*" is a term utilized when the prosecuting authority declines to prosecute and the charges are subsequently dismissed.

agreed to drop the charges. Plaintiff's attorney, believing the charge had been dropped, never made a formal appearance in the case and was thus never notified when the trial proceeded. Defendants contend Plaintiff's counsel made material misrepresentations to Melendez regarding Montes's decision to *nolle pros* the case. These misrepresentations then led to the trial in absence by Montes who was unaware of counsel's conversation with Melendez and intended to pursue the charges.[8]

As the Report succinctly stated:

> The record indicates that numerous irregularities occurred during the prosecution of Plaintiff, including during the discussion between Melendez and Plaintiff's counsel, the trial that proceeded without Plaintiff or counsel present, and the motion to reopen that proceeded without Plaintiff or counsel or Montes and where Melendez, who was present, failed, or was perhaps unable, to clarify the circumstances. Notwithstanding, the court cannot discern how, under these circumstances, it was Montes who violated Plaintiff's right to counsel or his right to due process or how Montes, or another reasonable officer similarly-situated, would have known he was violating Plaintiff's clearly-established Sixth and Fourteenth Amendment rights by proceeding with the trial in question.

(ECF No. 51, p. 38).

Neither party has presented any law showing Montes would have had notice that pursuing a claim he never agreed to *nolle pros* would violate Plaintiff's due process rights

---

[8] Plaintiff's objections state "the charge was not dismissed because of any alleged 'misrepresentation' by Plaintiff's counsel–as the Melendez Affidavit falsely suggests–but rather by decision of SCDPS's own Office of General Counsel. Melendez confirmed under oath that OGC reached out to the captain and advised that we should nolle pros the citation for Jason Sanders." (ECF No. 54, p. 18). In reading Melendez's affidavit, (ECF No. 49-1) it is clear he is referring to the material misrepresentation as contributing to his original agreement to *nolle pros* at the roster meeting on October 6, 2023. His later deposition testimony admitting that SCDPS general counsel decided to nolle pros referred to the supplemental proceedings occurring six months later. (ECF No. 49-2).

or right to counsel. Accordingly, Montes is entitled to qualified immunity as to this claim. Thus, Plaintiff's objections are overruled.

d. Fifth Amendment and Fourteenth Amendment Claims Against Rach, Lanier, and Swindler

Plaintiff's Fifth Amendment claims here raise the same arguments asserted against Montes above. Namely, Plaintiff believes SCCJA senior administrators provided *Garrity*-protected information to Montes who then incorporated that information into his arguments at the PDC trial. As stated above and noted in the Report, Plaintiff failed to offer any evidence beyond conjecture that the SCCJA provided Montes with information about SCCJA's internal investigation concerning Plaintiff. Accordingly, Rach, Lanier, and Swindler are entitled to summary judgment as to this Fifth Amendment claim and Plaintiff's objections to the contrary are overruled.

Plaintiff also asserts a "stigma-plus" claim against SCCJA administrators pursuant to the Fourteenth Amendment. Accordingly, Plaintiff must show that the relevant Defendants asserted charges against him that: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination; and (4) were false. *See Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007). Defendants argue that Plaintiff has failed to show that his charges were "made public" or were "false."

Plaintiff argues the Personnel Change in Status form ("PCS form") that was filed with the Law Enforcement Training Council is available to prospective employers and thus made public. In response, Defendants argue this production was required under South

Carolina law. Plaintiff also claims disclosure was made via SCCJA's publication of the South Carolina Law Enforcement Training Council's October 19, 2022, Meeting Minutes one day after Swindler approved and signed the PCS form.[9]

As to the PCS form, Plaintiff would have this Court determine that formation of the PCS form itself is evidence of publication because it is likely to be disseminated to prospective employers. However, Plaintiff fails to offer any evidence supporting this theory. As noted in the Report, Plaintiff has provided no evidence beyond the PCS form itself, which does not address this issue. Moreover, Defendants reiterate that they are required to file such reports by South Carolina law. Accordingly, Plaintiff has failed to show that violation of this particular right was clearly established at time of production. At most, this action would constitute a "bad guess in a gray area." Accordingly, Plaintiff has failed to show why summary judgment should not be granted.

As to the meeting minutes, Plaintiff has failed to show the falsity of the statement. The meeting minutes themselves accurately reflect the information received by the SCCJA and noted Plaintiff was suspended pending the outcome of his criminal charges. (ECF No. 47-3, p. 3). This information is correct. Plaintiff may disagree with the information reported to the SCCJA, however the meeting minutes do not show that the SCCJA adopted the information reported as true and accurate. Accordingly, the minutes are true and cannot be

[9] Plaintiff also avers the disclosures were made by Montes at the PDC trial and social media posts. However, Plaintiff has failed to offer any evidence showing protected information was produced to Montes or through social media.

used to support a stigma-plus due process claim which requires publication of false statements.

e. <u>SCTCA Negligence Claims Against the SCCJA and SCDPS</u>

Plaintiff does not appear to object to the recommendation of dismissal of negligence claims as to SCDPS. Therefore, that portion of the Report is adopted with no objection.

However, Plaintiff does object to the recommended dismissal of negligence claims against SCCJA based upon workers' compensation exclusivity.

Plaintiff's objections wholly fail to address the Report's conclusion that "Plaintiff has failed to offer evidence that SCCJA personnel shared information with SCDPS officers, that the follow-up interview was pretextual, or that his employment was terminated based on constitutionally protected, compelled statements." (ECF No. 51, p. 47).

In arguing against the application of the South Carolina Workers Compensation Act's ("SCWCA") exclusivity provision, Plaintiff asserts SCCJA was negligent in "assigning an unqualified investigator (Rach, who was not trained in internal affairs procedures) instead of utilizing its dedicated [internal affairs] investigator (Florence McCants), failing to ensure that *Garrity* protections were observed, and failing to prevent the dissemination of false information to the Training Council." (ECF No. 54, p. 25).

As noted earlier, Plaintiff has failed to support any *Garrity* claim. Additionally, the information that SCCJA provided was accurate in that it noted allegations against Plaintiff that had been reported to the SCCJA but did not make those allegations in its own right. Moreover, Plaintiff has failed to provide evidence indicating that SCCJA was negligent by

allowing Rach to conduct the investigation. Accordingly, Plaintiff has yet again failed to support any negligence claim against the SCCJA.

Even if Plaintiff had provided sufficient evidence, the SCWCA would severely limit Plaintiff's claims. SCCJA, as Plaintiff's employer, enjoys certain protections under the SCWCA. Section 42-1-540 of the SCWCA, commonly referred to as the "exclusivity provision," provides the exclusive remedy against an employer for an employee who sustains injuries arising out of his employment. *Sabb v. S.C. State Univ.*, 350 S.C. 416, 422, 567 S.E.2d 231, 234 (2002). The exclusivity provision is jurisdictional and bars all common law actions against an employer based on injuries within the scope of the SCWCA. *Id*.

However, exceptions to the rule include (1) when the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) when the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) when the tort is slander and the injury is to reputation; or (4) when involving certain occupations expressly excluded by the SCWCA. *Cason v. Duke Energy Corp.*, 348 S.C. 544, 548, 560 S.E.2d 891, 893 n.2 (2002).

Here, Plaintiff argues that SCCJA was negligent by sharing *Garrity*-protected information with SCDPS officers for use in a criminal prosecution, conducting a pretextual follow-up interview, and terminating his employment based on compelled statements that were constitutionally protected. Plaintiff emphasizes in his objections that his negligence claims are "fundamentally about reputational harm." (ECF No. 54, p. 24).

Courts in this District have determined that negligence actions against employers may proceed but in "doing so, it must not be forgotten that only injury to Plaintiff's reputation will be considered as a result of the operation of the SCWCA exclusivity bar." *Trahey v. Grand Strand Reg'l Med. Ctr./HCA Healthcare, Inc. Parallon*, No. 4:22-CV-01567-RBH-TER, 2023 WL 2643833, at *4 (D.S.C. Mar. 27, 2023). Accordingly, Plaintiff's negligence claims against SCCJA would have been limited to those comprising reputational injury were they allowed to proceed.[10] However, Plaintiff has failed to support such claims as discussed above.

Consequently, Plaintiff's negligence claims against the SCDPS and the SCCJA are dismissed.

f. Malicious Prosecution Claim Against SCDPS

The Report recommends granting summary judgment as to Plaintiff's claims for malicious prosecution against SCDPS pursuant to the South Carolina Torts Claim Act ("SCTCA"). Specifically, the Report concludes that the SCTCA excludes from its waiver of immunity any liability for loss resulting from actual malice. S.C. Code Ann. § 15-78-60(17) ("The governmental entity is not liable for a loss resulting from . . . employee

[10] Plaintiff also avers that his claims are not barred by workers compensation exclusivity as he has alleged intentional conduct. However, Plaintiff omits that the asserted claims are those for negligence. Indeed, Plaintiff states that "Plaintiff's negligence claims are fundamentally about reputational harm: the SCCJA's negligent supervision of the Rach investigation, which resulted in the dissemination of a false and defamatory PCS report that destroyed Plaintiff's law enforcement career and professional reputation." (ECF No. 54, p. 24-25). Accordingly, Plaintiff undermines his own argument.

conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.").

Plaintiff's objections focus on the liability limitation contained within S.C. Code Ann. § 15-78-60(23) which prohibits claims for loss arising from "institution or prosecution of any judicial or administrative proceeding" as opposed to § 15-78-60(17).[11] Although § 15-78-60(23) may also be applicable here as it limits liability for prosecution of any judicial proceeding, Defendants asserted § 15-78-60(17) as the basis for summary judgment. Further, § 15-78-60(17) clearly excludes liability for loss from employee action that constitutes actual malice. Because Plaintiff affirmatively asserts that Montes' actions constitute actual malice, his claim for malicious prosecution is barred by the SCTCA.

Plaintiff states repeatedly that his claims should not be denied because the prosecuting officer "acted with actual malice." (ECF No. 54, p. 26). However, it is for that very reason that the claim must be dismissed. SC. Code Ann. § 15-78-60(17) states that a "governmental entity is not liable for a loss resulting from . . . *employee conduct* outside the scope of his official duties or *which constitutes* actual fraud, *actual malice*, intent to harm, or a crime involving moral turpitude." Because Plaintiff claims Montes acted with actual malice, Plaintiff's claims against SCDPS are barred by the SCTCA.

---

[11] Plaintiff erroneously states that "the R&R held that Plaintiff's state-law malicious prosecution claim against SCDPS was barred by S.C. Code Ann. § 15-78-60(23), which provides immunity for claims arising from 'employee conduct not amounting to actual malice.'" (ECF No. 54, p. 26). Although the Report cited both subsection (23) and (17), subsection (23) has no reference to malice.

Additionally, Defendants specifically pleaded § 15-78-60(17) as an affirmative defense. (ECF No. 5, ¶ 17). Thus, Plaintiff's assertion that Defendants never asserted § 15-78-60(23) as an affirmative defense in their Answer to Plaintiff's Complaint misses the mark.

Accordingly, Plaintiff's objections are overruled.

g. Defamation Claims Against SCDPS and SCCJA

Next, Plaintiff objects to the recommendation of dismissal as to his defamation claims against SCDPS and SCCJA. All parties appear to overlook that Plaintiff's defamation claims are asserted against the governmental entities. Accordingly, the limitations within the SCTCA are applicable. As discussed above, governmental agencies cannot be liable for "employee conduct . . . which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-60(17). Here, Plaintiff specifically avers that the relevant statements were made with actual malice and with the intent to harm. (ECF No. 54, p. 34) ("Publishing patently false statements to the Training Council with knowledge or reckless disregard of their falsity satisfies the actual malice standard."); (ECF No. 1-1, ¶¶ 245, 255) (alleging the statements "were made for the purpose and with the intent of damaging the reputation of the Plaintiff."). Thus, Plaintiff's defamation claims are barred by the SCTCA. *See Cocklin v. S.C. Dep't of Mental Health*, No. CV 3:18-2214-JMC-PJG, 2019 WL 13259289, at *5 (D.S.C. Apr. 4, 2019) ("Here, [Plaintiff] alleges that the purported defamatory statements 'were made with the intent to harm [Plaintiff].' Thus, [Plaintiff's] Amended Complaint shows that her defamation claim against the Department is barred by the SCTCA.").

Moreover, Plaintiff's claims against SCDPS arise out of Montes's statements during the PDC trial. As noted by the Report, statements made in the course of judicial proceedings are entitled to absolute immunity. "South Carolina law is clear that all statements relevant to a matter at issue in a judicial proceeding are entitled to absolute immunity." *Belton v. W. Marine, Inc.*, No. CV 0:16-3347-TLW-SVH, 2017 WL 1373374, at *2 (D.S.C. Jan. 17, 2017), *report and recommendation adopted*, No. CV 0:16-3347-TLW, 2017 WL 1353755 (D.S.C. Apr. 13, 2017).

Plaintiff avers that the privilege does not apply to perjured testimony but provides no support for such an assertion. Contrary to Plaintiff's position, the South Carolina Supreme Court has noted that when "a communication is absolutely privileged, no action lies for its publication, no matter what the circumstances under which it is published, i.e., an action will not lie even if the report is made with malice." *Hainer v. Am. Med. Int'l, Inc.,* 328 S.C. 128, 135, 492 S.E.2d 103, 106 (1997) (citations omitted). Accordingly, Plaintiff's argument lacks merit.

Plaintiff also argues that he should not be considered a "public figure" when determining the requisite level of malice needed to prove the defamation claim. Regardless, Plaintiff states numerous times that he has shown actual malice and avers the statements were made with an intent to harm. Accordingly, the SCTCA immunities referenced above work to bar Plaintiff's claims. Thus, Defendants are entitled to summary judgment as to Plaintiff's defamation claims.

h. Malicious Prosecution Against Montes

Defendants first object to the Report's suggestion that summary judgment be denied as to Plaintiff's malicious prosecution claim against Montes.

Plaintiff's claim for malicious prosecution under 42 U.S.C. § 1983 implicates the Fourth Amendment and requires him to show that (1) the defendant caused (2) a seizure pursuant to legal process (3) unsupported by probable cause, and (4) the criminal proceeding terminated in Plaintiff's favor. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

Here, there is no dispute that Plaintiff was seized upon his arrest. Moreover, as discussed above, the facts, when construed in Plaintiff's favor, support Plaintiff's contention that Montes lacked probable cause for the PDC arrest. Accordingly, the Court is left to determine if the criminal proceedings terminated in Plaintiff's favor.

Plaintiff argues the proceedings terminated in his favor when his charges were eventually *nolle prossed*. However, this termination came after a jury found Plaintiff guilty in his absence. The case was then reopened and dismissed. Defendants argue the initial conviction established probable cause. Conversely, Plaintiff argues that the initial conviction was procured through fraud, perjury, or other undue means and does not establish probable cause.

Under South Carolina law, "a conviction, even though subsequently reversed or set aside, conclusively establishes probable cause absent a showing the conviction was procured through fraud, perjury or other undue means." *Deaton v. Leath*, 279 S.C. 82, 84, 302 S.E.2d 335, 336 (1983).

The Report noted that Defendants failed to address many of Plaintiff's arguments and the "record shows, at a minimum, numerous irregularities, including that Montes did not provide all exculpatory evidence to the jury, that Plaintiff was unable to provide this evidence because he was not in attendance, and that Montes did not inform the court Plaintiff was represented by counsel until after the verdict was rendered." (ECF No. 51, p. 32). Defendants have failed to show how this was in error.

Defendants further aver they are entitled to qualified immunity because "Plaintiff has likewise not identified a case which would fairly warn Montes or a reasonable similarly-situated officer that proceeding with the trial at issue here would violate Plaintiff's clearly established rights." (ECF No. 53, p. 3). The Court disagrees. Plaintiff presents a malicious prosecution claim, and Montes knew that pursuing a conviction without probable cause would violate Plaintiff's Fourth Amendment rights. Accordingly, Montes is not entitled to qualified immunity.

Further, as to the favorable termination element, Plaintiff has presented evidence that the conviction was secured through undue means. Specifically, Montes knew Plaintiff was represented by counsel and was aware of a docket entry noting the case was to be *nolle prossed*. Despite this, Montes proceeded to trial without notifying Plaintiff or his attorney. When construed in a light most favorable to Plaintiff, the evidence shows that Montes moved forward with a case Plaintiff believed had been resolved, yet Montes felt no need to inform Plaintiff of that decision. No reasonable officer would believe Plaintiff's Fourth Amendment rights were not violated under these circumstances. Moreover, Plaintiff avers Montes secured the conviction via perjury as there was no evidence that Plaintiff used

profanity or struck Pavlick.[12] Accordingly, Defendants are not entitled to qualified immunity.

Defendants also aver that they never withheld exculpatory evidence from Plaintiff's counsel. Defendants may be correct that they never withheld evidence but only because Plaintiff's counsel believed the matter had been dropped and had no knowledge of the trial. Thus, this argument misses the mark.

As discussed in the Report, there is a genuine issue of fact as to whether Montes secured Plaintiff's conviction through fraud, perjury, or other undue means. Moreover, any reasonable officer would have known that such actions violated Plaintiff's Fourth Amendment rights. Accordingly, Defendants have failed to show any error in the Report.

i. False Arrest Against SCDPS

The Report next recommends summary judgment be denied as to Plaintiff's false arrest claim against SCDPS. The Report notes that Defendants argue there is no cause of action for false arrest if the arrest warrant is facially valid. However, the Report correctly continues that Plaintiff was not arrested pursuant to a warrant. Accordingly, Defendants' arguments were unavailing.

In their objections, Defendants note that they "also set forth the provisions of the South Carolina Tort Claims Act as a bar to Plaintiff's claims, including S.C. Code § 15-

---

[12] The Fourth Circuit held nearly two decades ago that "a police officer violates the Fourth Amendment" when he "make[s] false statements or omit[s] crucial facts in a warrant affidavit," and that the right is "clearly established": "a police officer who recklessly or knowingly includes false information . . . or omits material facts" in a probable-cause affidavit "cannot claim qualified immunity," because such conduct "is not objectively reasonable." *Miller v. Prince George's County*, 475 F.3d 621, 631–32 (4th Cir. 2007).

78-60 (3) ("execution, enforcement, or lawful implementation of any process"); and § 15-78-60 (5) ("the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee")." (ECF No. 53, p. 6). Thus, the governmental entity is not liable for the loss resulting from such an action unless the governmental entity or employee acts in a grossly negligent manner. Defendants urge the court to apply those statutory provisions here as a bar to Plaintiff's false arrest claim.

In response, Plaintiff points out that evidence in the record indicates Montes erroneously asserted Plaintiff "was yelling profanities" and "struck a person with his right arm." (ECF No. 45-14, p. 2). Montes then admitted under oath that the video did not capture Plaintiff hitting Pavlick or cursing, that Plaintiff was "incredibly calm," that the elements of PDC were not met, and that he omitted these facts from his report. Swearing to material facts the officer knew were untrue, and omitting material facts he knew were exculpatory, is at a minimum gross negligence, the failure to exercise slight care, and ordinarily a jury question.[13]

S.C. Code Ann. § 15-78-60(3) prevents liability for "execution, enforcement, or lawful implementation of any process." Further, S.C. Code Ann. § 15-78-60(5) prevents liability for the exercise of discretionary functions. Based on the evidence before the court, a jury could find Montes swore out an affidavit containing false information and omitting exculpatory material. If so, it can hardly be said the arrest was pursuant to a "lawful

[13] Again, the court must construe the contested facts in a light most favorable to Plaintiff.

implementation" of process. Additionally, law enforcement officers have no discretion to fabricate evidence when effectuating arrest. Thus, these statutory provisions do not provide a basis for summary judgement and Defendants' objections are overruled.

## IV. CONCLUSION

After a thorough review of the Report, the applicable law, and the record of this case, the Report and Recommendation (ECF No. 51) is adopted in part and modified in part. Defendants' motion for summary judgment is thus granted in part and denied in part. Specifically, summary judgment is granted as to Plaintiff's:

- Fifth Amendment Claim against Montes;
- Sixth Amendment and Fourteenth Amendment Claims Against Montes;
- Fifth and Fourteenth Amendment Claims Against Rach, Lanier, and Swindler;
- Negligence Claims Against the SCDPS and the SCCJA;
- Malicious Prosecution Claim Against SCDPS; and
- Defamation Claims Against SCDPS and SCCJA.

Summary judgment is denied as to Plaintiff's claims for:

- Unlawful Seizure Against Montes;
- Malicious Prosecution Against Montes;
- False Arrest Against SCDPS.

IT IS SO ORDERED.

Joseph F. Anderson, Jr.

October 20, 2026
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge